Kenneth KANE, individually and as Guardian, next friend and on behalf of Jonathon Andrew Kane, a minor, Plaintiff–Appellant,

v.

AETNA LIFE INSURANCE and Southern Bell Telephone & Telegraph, Defendants–Appellees.

No. 88–6148.

United States Court of Appeals, Eleventh Circuit.

Feb. 7, 1990.

Richard H. Levenstein and James Leech, Bond, Schoeneck & King, Boca Raton, Fla., for plaintiff-appellant.

John R. Hargrove, Lillian P. Wolfe, Ft. Lauderdale, Fla., and Rhonda K. Lewis, Tamarac, Fla., for defendants-appellees.

Before VANCE* and COX, Circuit Judges, and EDENFIELD**, District Judge.

VANCE, Circuit Judge:

Appellant Kenneth Kane appeals the summary judgment entered by the district court in favor of appellees Aetna Life Insurance Company ("Aetna") and Southern Bell Telephone & Telegraph ("Southern Bell"). The district court held that the law of equitable estoppel was preempted in this case by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1401. Because we are of the opinion that equitable estoppel may be applied in this case, we reverse.

I.

Kathy Kane, wife of appellant, first learned of the availability of an infant for adoption approximately ten to fourteen days after the child's birth on May 19, 1984. The child had been born prematurely at Plantation General Hospital and suffered serious medical complications. The Kanes were aware of the child's medical condition. After hearing about the child, the Kanes discussed the possibility of adopting him. The couple realized that without insurance coverage they would be unable to pay for the child's medical expenses.

At the time of the child's birth, appellant was, and continues to be, employed by appellee Southern Bell. After learning of the child and deciding to further investigate the possibility of adoption, the Kanes sought to ascertain whether the Southern Bell Employee Medical Benefit Plan ("Plan"), which covered appellant, would pay for the child's medical expenses. The Kanes did not have a copy of the Plan. On or about May 29, 1984, Mrs. Kane telephoned the Macon, Georgia office of appellee Aetna, which administered the Plan for Southern Bell. Mrs. Kane informed the Aetna customer service representative that she and her husband were interested in adopting a child who was hospitalized at that time. The Aetna representative informed Mrs. Kane that the child would be covered under the Plan from the date of the commencement of formal legal adoption proceedings.[1]

On June 12, 1984, Maria Almendros, an insurance verifier for the hospital, telephoned Aetna to determine whether the child's medical expenses would be covered under the Plan. Lorrie Knight, an Aetna employee authorized to provide information to callers about coverage under the Plan, told Ms. Almendros that the medical ex-

---

* This opinion was written by Honorable Robert S. Vance and concurred in by panel members prior to his death on December 16, 1989.

** Honorable B. Avant Edenfield, U.S. District Judge for the Southern District of Georgia, sitting by designation.

1. Section II of the Plan defines the term "child" to include

> The employee's or retired employee's own children and legally adopted children including those who are in the formal legal process of adoption, regardless of residence.

Plan at 3. The Plan does not define the phrase "formal legal process of adoption."

penses would be covered under the Plan beginning on June 1, 1984. The child remained in the hospital until July 5, 1984, amassing substantial medical expenses.

Appellant filed a claim with Aetna for the child's medical expenses, but Aetna denied the claim. As justification, Aetna cited the provision of the Plan stating that medical expenses for a continuous hospitalization are not covered under the Plan where the hospitalization began prior to the effective date of coverage. Because the formal adoption proceedings did not begin until after the commencement of the infant's hospitalization, Aetna maintained, it was not obligated to pay for any of the medical expenses. *See supra* note 1. As a result of the denial, appellant filed suit against Aetna, basing the action on two theories—equitable estoppel and wrongful denial of a claim.

## II.

In its order granting appellee's motion for summary judgment, the district court correctly held that ERISA preempts all state common law claims relating to employee benefit plans, including appellant's equitable estoppel claim.[2] *See* 29 U.S.C. § 1144(a); *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Federal courts possess the authority, however, to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself. *Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1557. This court has held that the federal common law of equitable estoppel is not available to plaintiffs in cases involving oral amendments to or modifications of employee plans governed by ERISA because ERISA specifically addresses these issues. *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986) (construing 29 U.S.C. § 1102(a)(1), which requires that employee benefit plans must be "established and maintained pursuant to a written instrument"). The district court found that Aetna's representations to Mrs. Kane and the hospital insurance verifier constituted oral modifications of the Plan. Relying on *Nachwalter,* the court held that all claims based on these modifications were precluded under ERISA.

Appellant asserts that the federal common law of equitable estoppel may be applied in this case because the representations made by Aetna to Mrs. Kane and the hospital were *interpretations* of the Plan, and not modifications. We agree.[3]

Our conclusion is premised entirely on the language of the Plan itself. The provisions of the Plan at issue here are ambiguous: reasonable persons could disagree as to their meaning and effect. With regard to the effective date of coverage, the Plan specifies that

> Full-time employees (and part-time employees) and their eligible dependents

---

2. The parties agree that the proper standard of review is *de novo.* In *Firestone Tire and Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that district courts should use the *de novo* standard to review denial of employee benefits challenged under 29 U.S.C. § 1132(a)(1)(B) unless the benefit plan gives the administrator discretion to manage the plan. 109 S.Ct. at 956. Both parties agree that Aetna had no discretion in administering the Plan. Although the district court incorrectly applied the "arbitrary and capricious" standard to Aetna's denial of appellant's claim, we find this error to be of no consequence.

3. We are not unmindful of the rule that estoppel may not be invoked to enlarge or extend the coverage specified in a contract. *See* 18 M. Rhodes, *Couch Cyclopedia of Insurance Law* § 71:40 (Rev. ed. 1983) ("The doctrine of waiver or estoppel cannot be given the effect of enlarg-

ing or extending the coverage as defined in the contract, nor can it create a contract of insurance, since a cause of action cannot be based on a waiver"); *cf.* W. Meyer, *Life & Health Insurance Law* § 9:16 (1971) ("The majority rule has been said to be that while waiver or estoppel may operate to avoid a forfeiture of a policy, it can't change or enlarge the coverage").

This rule embodies the concept that estoppel may not be used to create contractual liability where no contract originally existed. The rule, however, does not apply to the facts of this case, because the application of equitable estoppel will not result in an extension or enlargement of the benefits available under the Plan. The representations made by Aetna amounted to an interpretation of an ambiguous provision of the Plan, not an extension of coverage beyond that specified in the Plan.

**1286**

will be covered under the plan on a non-contributory basis, on the first day of the month in which the employee will complete a Term of Employment of six (6) months.

No benefits are covered for charges incurred during a continuous hospital confinement which commenced prior to the effective date of coverage under this plan.

Plan at 2. These provisions clearly are subject to varying interpretations. They may be read as appellees assert—that the "effective date of coverage" language quoted above applies to any person, whether an employee or a dependent of an employee, who claims coverage under the Plan. Consistent with this reading, any person who claims coverage under the Plan for a continuous hospitalization must have been eligible at the commencement of the hospitalization.

The provisions may, however, be construed differently. The "effective date of coverage" language may apply only to the employee. Under this view, once the employee has completed the requisite six-month period, the Plan covers both the employee and his or her dependents. Consequently, the provision that addresses continuous hospitalization is relevant only when the hospitalization commences prior to the completion of the six-month period. *See* W. Meyer, *Life & Health Insurance Law* § 2:4 (1971) (noting the rule with respect to insurance policies that "an ambiguity in the written statement of a contract will be construed against the party who wrote it").

Given this ambiguity, we are of the opinion that these events involved an oral interpretation of the Plan, not an amendment or modification. On two separate occasions, Aetna, acting by and through its duly authorized representative assured appellant and another calling on his behalf that policy coverage applied as of the time formal adoption proceedings were begun. Appellant incurred very substantial expenses relying on Aetna's interpretation of an ambiguity within the Plan.

Because the issue before us involves an oral interpretation of an ERISA plan, the *Nachwalter* decision, which is limited to oral amendments and modifications, is not controlling. *See* 805 F.2d at 960. The federal common law of equitable estoppel may be applied to the facts of this case.[4] *See* 2 M. Rhodes, *Couch Cyclopedia of Insurance Law* § 15:54 (Rev. ed. 1984) ("An insurer, however, may be estopped in reference to the meaning of a particular term in one of its contracts by its own interpretation of that term"). In reaching this conclusion, we are unpersuaded by appellees' argument that the application of the federal common law of equitable estoppel in this case would be contrary to the underlying policy of ERISA. Requiring appellees to adhere to the oral interpretations of the Plan's provisions made by Aetna to Southern Bell employees will not undermine the integrity of the Plan. Stating the question more broadly, the use of the law of equitable estoppel to enforce oral interpretations of employee benefit plans will not affect the ability of employees and beneficiaries to rely on the written terms of such plans.

Because we find that the federal common law of equitable estoppel may be applied in this case, we REVERSE the district court's order granting summary judgment in favor of appellees and REMAND for further proceedings consistent with this opinion.

---

4. Other courts have applied the law of equitable estoppel in ERISA cases, *see, e.g., Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1096 (9th Cir. 1985); *Torrence v. Chicago Tribune Co.,* 535 F.Supp. 748 (N.D.Ill.1982), as well as in comparable situations, *see, e.g., Cann v. Carpenters* *Pension Trust for Southern California,* 662 F.Supp. 501 (C.D.Cal.1987) (pension trust claim); *Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 597–98 (3d Cir.) (same), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981).